**United States District Court**
For the Northern District of California

1
2
3
4
5                   IN THE UNITED STATES DISTRICT COURT
6
7              FOR THE NORTHERN DISTRICT OF CALIFORNIA
8
JERRY G. WILLS,                          No. C 05-2690 CW (PR)
9
            Petitioner,                   ORDER DENYING PETITION
10                                         FOR WRIT OF HABEAS CORPUS
      v.
11
BEN CURRY, Warden,
12
            Respondent.
13
_____/
14
15
16                              INTRODUCTION
17      Petitioner Jerry G. Wills, a state prisoner, has filed a <u>pro
18 se</u> petition for a writ of habeas corpus pursuant to 28 U.S.C.
19 § 2254, challenging as a violation of his constitutional rights the
20 denial of parole by the California Board of Parole Hearings
21 (Board).[1]  Specifically, Petitioner claims that the Board's
22 decision was arbitrary and capricious and failed to meet the "some
23 evidence" standard identified in <u>Superintendent v. Hill</u>, 472 U.S.
24 445, 455 (1985).
25      In response to Petitioner's original petition, the Court
26 issued an Order to Show Cause on January 19, 2006.  Petitioner had
27
      [1] The Board of Prison Terms was abolished effective July 1,
28 2005, and replaced with the Board of Parole Hearings.  Cal. Penal
   Code § 5075(a).

**United States District Court**
For the Northern District of California

1  filed an amended petition on the previous day, raising the same

2  claims.

3      On March 16, 2006, Respondent filed a motion to dismiss

4  claiming that Petitioner does not have a federally protected

5  liberty interest in parole, and that therefore the Court lacks

6  subject matter jurisdiction.  Citing <u>Sass v. California Bd. of</u>

7  <u>Prison Terms</u>, 461 F.3d 1123, 1125 (9th Cir. 2006), the Court denied

8  Respondent's motion on February 1, 2007 and ordered Respondent to

9  file an answer.

10      On March 30, 2007, Respondent Warden Ben Curry[2] filed an

11  answer addressing the claims in Petitioner's original petition.[3]

12  Petitioner has filed a traverse.  Having considered all of the

13  papers filed by the parties, the Court DENIES the petition.

14                          BACKGROUND

15      At Petitioner's fourth parole suitability hearing on June 1,

16  2004, the Board considered the following information, derived from

17  the Orange County Probation Officer's Report:

18      Records of the Fountain Valley Police Department (case
    # 79-7951) reveal that on December 22, 1979, shortly
19      after 4:00 A.M., a report was received of possible
    gunshots being fired and a woman screaming, at 10355
20      Slater, Building 12, Apartment 201.  Officers responded
    to that location, and heard a man and woman talking in
21      subdued voices, within the apartment.  Officers knocked

22

23      [2] The State claims that under Rule 2(a) of the Rules Governing
    Habeas Corpus Cases Under Section 2254, the proper respondent is
24  Ben Curry, the warden at the Correctional Training Facility where
    Petitioner is incarcerated.  (Answer at note 1.)  Accordingly, the
25  Court directs the Clerk of the Court to substitute Warden Ben Curry
    as Respondent in this action.

26      [3] In his answer, Respondent again raises the argument that the
    Court lacks subject matter jurisdiction.  However, this argument
27  has already been ruled on.

28                              2

on the door and identified themselves, and the door was
opened by the defendant, Jerry Gene Wills.  He was put
under gunpoint and was searched for weapons.  A .38
calibre revolver was located in his rear trouser pocket.
The defendant was placed in custody at that time.  A
search of the interior of the residence revealed the
nude, face-down body of twenty-seven-year-old Mark
Stephen Pesanti, who appeared to be deceased.
Investigation showed that he had been shot three times by
the defendant's weapon.  Lying next to Pesanti, on the
floor, was twenty-two-year-old Joelle Catherine
Sennewald, one of the two female residents of that
apartment.  She too was nude, and appeared to be
suffering from a gunshot wound in her upper chest.
Additionally present in the apartment was twenty-five-
year-old Carol Ann Walker, Miss Sennewald's roommate.
Miss Walker was uninjured.

Investigation revealed that Miss Sennewald had been
dating both Mark Pesanti and the defendant, Jerry Wills,
and that late in the evening, on December 21, 1979, the
three of them had had a lengthy discussion, at Miss
Sennewald's residence, regarding her intentions with
reference to the two men.  At that time, she reportedly
had told the defendant that she no longer wanted to date
him, and that she was going to exclusively see Mark
Pesanti.  The defendant reportedly left her residence at
that time.  Approximately fifteen minutes later, he
called Miss Sennewald on the telephone and told her to
listen carefully, and that the next sound she heard would
be a gunshot.  At that time, she reportedly slammed the
receiver down on the hook and then disconnected the line.
According to the report, Miss Sennewald and Mark Pesanti
then went to bed together, and apparently engaged in
sexual intercourse.  At approximately 4:00 A.M., on
December 22, 1979, the defendant had apparently scaled a
tree, next to Miss Sennewald's apartment, and had then
entered the sliding glass door on the second floor of the
residence.  He reportedly held a gun on Mr. Pesanti and
Miss Sennewald, and turned on a nearby light.  While he
was reaching to turn on a bedside lamp, Mark Pesanti
reportedly attempted to knock the gun from his hand, and
a struggle ensued.  Miss Sennewald ran from the room,
after hearing one gunshot, and was followed several
seconds later by Mr. Pesanti.  He in turn was pursued by
the defendant, into Miss Walker's bedroom, where the
defendant apparently fired two more shots at Mr. Pesanti,
ultimately causing fatal injuries.  He then shot Miss
Sennewald in the upper chest.  The report indicates that
he reloaded his weapon, and that shortly thereafter the
police arrived and placed him under arrest.

(Resp't Ex. 2, Orange County Pre-Sentence Report at 3.)

3

**United States District Court**
For the Northern District of California

On July 16, 1980, Petitioner was convicted of one count of first degree murder and one count of attempted murder in the Orange County Superior Court.  (<u>Id.</u> at 3.)  On August 13, 1980, Petitioner was sentenced to twenty-seven years to life in state prison.  (<u>Id.</u>; Pet. at 9.)  Petitioner was received into the California Department of Corrections and Rehabilitation on September 10, 1980, and his minimum parole eligibility date was set for January 5, 1996.  (Pet'r Ex. A, Cumulative Case Summary at 1.)

At Petitioner's fourth parole suitability hearing, the Board found Petitioner unsuitable for parole because he posed an "unreasonable risk of danger to society or a threat to public safety if released from prison."  (Resp't Ex. 1, Parole Consideration Hearing Transcript at 77.)  The Board issued a three-year parole denial.  (<u>Id.</u> at 81.)  The Board found that the commitment offense demonstrated an "exceptionally callous disregard for human suffering and life" and was carried out in an "especially cruel, brutal, and violent manner."  (<u>Id.</u>)  The Board took into consideration the fact that multiple victims were involved in the attack as well as the fact that Petitioner fired multiple shots at point-blank range.  (<u>Id.</u> at 77-78.)

The Board further found that Petitioner lacked sufficient participation in self-help, anger management and substance abuse programming.  (<u>Id.</u> at 80.)  The Board considered Petitioner to be both unpredictable and a threat to others due to his failure adequately to participate in such programming.  (<u>Id.</u>)  In addition, the Board found that Petitioner had an "unstable social history" as shown by his time in foster care after his parents divorced as well

4

as his admitted previous use of alcohol and drugs.  (<u>Id.</u> at 78-79.)

The Board examined Petitioner's psychological evaluation from December 24, 1999.  (<u>Id.</u> at 35.)  In the 1999 psychological evaluation, Dr. Carswell wrote of Petitioner:

> [I]t is felt that he would pose a less than average risk for violence when compared to this Level II inmate population.  If released to the community, his violence potential is estimated to be no higher than the average citizen in the community.  The most significant risk factor as a precursor for violence for this inmate would be a return to polysubstance abuse.

(Pet'r Ex. D, 1999 Psychological Evaluation at 5.)  The Board also considered Petitioner's psychological evaluation from January 28, 2004, which incorporated the 1999 psychological evaluation.  The Board found that the 2004 psychological evaluation was not "totally supportive of release" because it said that Petitioner's only risk of future criminality would be if he returned to substance abuse.  (Resp't Ex. 1 at 79.)  The Board desired further psychological evaluation regarding Petitioner's relationships with women and potential spousal abuse problems that it considered inadequately addressed.  (<u>Id.</u> at 82.)

The Board considered the opposition to parole voiced by the surviving victim Sennewald, the murdered victim's next of kin, and the Orange County District Attorney's Office.  (<u>Id.</u> at 80.)

The surviving victim Sennewald testified in part:

> Jerry said he wants to be paroled in San Diego.  I live in San Diego. . . .  And I really hope that Jerry can do his Christian work here in prison.  I really don't want him out on the streets because I really don't think -- I really don't think it will be good for anyone.

(<u>Id.</u> at 74, 76.)

Alan Pesanti, the brother of the murdered victim, expressed

United States District Court
For the Northern District of California

his opposition to parole, stating:

> [M]y entire family is asking life in prison and let him serve the Christian community in prison. It's been devastating beyond belief to my family, every day and every holiday. In our opinion, it was a brutal, senseless murder out of jealousy and rage. And I believe in my heart that there's a chance that he can harm someone else again if ever allowed out of prison.

(Id. at 71.)

Deputy District Attorney Mitchell, representing the Orange County District Attorney's Office, testified in part:

> [The prisoner] has said to [the Board], I've never done those things, which is interesting to me because I'm sitting next to the woman he shot. So if he's never been violent to anybody before, how do you explain you shot this person and you shot her male companion three separate times . . . that's just not an accident. I think he's a violent man. I think he'll say or do whatever he thinks he has to do to get out of prison, which is, I suppose, understandable. But it's just a bad, bad risk to the public safety to let this man go. We oppose parole for him.

(Id. at 59-60.)

The Board considered letters from Petitioner's friends and family from San Diego, Big Bear Lake, Florida and Indiana pledging to support Petitioner if the Board granted him parole. (Id. at 37-45.) His friends Brian Zuniga and Dennis Walters offered to support Petitioner in San Diego, where he planned to work in a retail business for Mr. Zuniga. (Id. at 38.) Another friend, Ronald E. White, offered Petitioner an opportunity to work for a construction company in Big Bear Lake, California. (Id. at 39-40.) Petitioner's son, J. Brian Wills, offered to find "gainful employment" for Petitioner in Sarasota, Florida. (Id. at 41.) Finally, Petitioner's family offered to support him with a place to live in Indiana. (Id. at 39.) In response to these letters of

United States District Court
For the Northern District of California

6

**United States District Court**
For the Northern District of California

support, the Board found Petitioner's parole plans to be "fine." (<u>Id.</u> at 79.)

The Board commended Petitioner for his vocational training, for not receiving any disciplinary actions since 1984, for excellent work reports, for earning college units in the School of Bible, and for participating in a thirteen-week Impact Program. (<u>Id.</u> at 80.)  However, the Board found that these positive aspects of his behavior did not outweigh the factors of unsuitability. (<u>Id.</u>)  The Board encouraged Petitioner to "remain disciplinary free, continue to participate in self-help and substance abuse classes, and cooperate with clinicians in the completion of a clinical evaluation before the next Board hearing."  (<u>Id.</u> at 82.)

Petitioner filed a state petition for a writ of habeas corpus in the Orange County Superior Court, alleging that the Board's parole denial was arbitrary and capricious and unsupported by any evidence, in violation of his federal due process rights.  (Pet'r App. 1, Nov. 12, 2004 Orange County Superior Court Order at 2.) The superior court denied habeas corpus relief on November 12, 2004.  (<u>Id.</u> at 5.)  The superior court held the Board's findings of insufficient participation in self-help programming, unfavorable psychological and institutional evaluations, and an unstable social history to be "devoid of sufficient evidentiary support."  (<u>Id.</u> at 3.)  However, the court concluded that there was an adequate evidentiary basis for denying parole based on the "compelling circumstances of the commitment offense" as well as the opposition voiced by the surviving victim, the murdered victim's next of kin, and the Orange County District Attorney's Office.  (<u>Id.</u> at 2-3.)

The court also stated that there was no due process interest in parole. (Id. at 4.) However, as mentioned above, the Ninth Circuit has held otherwise, see Sass, 461 F.3d at 1125, and this Court is obliged to follow the Ninth Circuit. Nevertheless, this failure to recognize a due process interest in parole did not seem to affect the superior court's decision.

On February 4, 2005, Petitioner filed a state habeas petition in the California Court of Appeal. (Pet'r App. 2, Docket Sheet for California Supreme Court Official Website at 1.) On March 3, 2005, the petition was denied. (Id.)

On March 15, 2005, Petitioner filed a state habeas petition in the California Supreme Court, which was denied on May 18, 2005. (Id.)

LEGAL STANDARD

Because this case involves a federal habeas corpus challenge to a state parole eligibility decision, the applicable standard is contained in the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). McQuillion v. Duncan, 306 F.3d 895, 901 (9th Cir. 2002).

Under AEDPA, a district court may not grant habeas relief unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d); Williams v. Taylor, 529 U.S.

8

362, 412 (2000).  A federal court must presume the correctness of the state court's factual findings.  28 U.S.C. § 2254(e)(1).

Petitioner has exhausted his state remedies by filing the petition for a writ of habeas corpus in the California Supreme Court.  Where, as here, the highest state court to reach the merits issued a summary opinion which does not explain the rationale of its decision, federal court review under § 2254(d) is of the last state court opinion to reach the merits.  Bains v. Cambra, 204 F.3d 964, 970-71, 973-78 (9th Cir. 2000).  In this case, the last state court opinion to address the merits of Petitioner's claim is the reasoned opinion of the Orange County Superior Court.

DISCUSSION

I.    Due Process Claim

A.    Some Evidence

Petitioner asserts that his federal due process rights were violated by the Board's decision to deny parole because it was "not supported by 'some evidence' having an indicia of reliability" to support such a decision.  (Pet. at 10.)  Petitioner's claim fails.

Because California prisoners have a constitutionally protected liberty interest in release on parole, they cannot be denied a parole date without the procedural protections necessary to satisfy due process.  McQuillion, 306 F.3d at 902.  A parole board's decision must be supported by "some evidence" to satisfy the requirements of due process.  Hill, 472 U.S. at 455; McQuillion, 306 F.3d at 904; Morales v. California Dep't of Corrections, 16 F.3d 1001, 1005 (9th Cir. 1994), rev'd on other grounds, 514 U.S. 499 (1995).  The evidence underlying the parole board's decision

9

must have some indicia of reliability.  <u>McQuillion</u>, 306 F.3d

at 904; <u>Jancsek v. Oregon Bd. of Parole</u>, 833 F.2d 1389, 1390 (9th

Cir. 1987).

     In denying Petitioner's request for parole, the Board cited as

evidence the "especially violent and brutal" nature of the

commitment offense, stating:

> [The prisoner] burglarized the residence.  He came in,
> turned on the light.  When he went to turn on a second
> light, apparently there was a scuffle between the
> prisoner and victim one, Mark Pesanti.  As a result, the
> victim, Pesanti, was shot twice.  He ran into the next
> room and I believe he was shot again.  While they were in
> the next room, the victim two, Joelle Sennewald . . . was
> standing in front of the prisoner and he shot her
> pointblank in the chest . . . .  This offense was carried
> out in an especially violent and brutal manner.  He shot
> the victim number one three times with a handgun and then
> at pointblank range, he shot victim two in the chest one
> time.  The offense was carried out in a manner which
> demonstrates an exceptionally callous disregard for human
> suffering and life.  This was needless.

(Resp't Ex. 1 at 78.)

     Petitioner argues that the Board's finding that the nature of

his offense outweighed the positive aspects of his profile was not

supported by the evidence.  (Pet. at 12.)  He relies on <u>Biggs v.</u>

<u>Terhune</u>, 334 F.3d 910, 915-16 (9th Cir. 2003).  He also claims that

the Board's decision to deny parole violated his due process rights

because the Board did not act impartially and did not comply with

California Penal Code § 3041(a), which states that the Board "shall

normally set a parole release date . . . ."  Cal. Penal Code

§ 3041(a).  There is an exception to § 3041(a), which states:

> the board, sitting en banc, shall set a release date
> unless it determines that the gravity of the current
> convicted offense . . . or past convicted offense or
> offenses, is such that consideration of the public
> safety requires a more lengthy period of incarceration

10

**United States District Court**
For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

. . . and that a parole date, therefore, cannot be fixed . . . .

Cal. Penal Code § 3041(b).  However, Petitioner argues that the Board's overuse of this exception is evidence that the Board had a predisposition to deny his parole regardless of the circumstances.

In <u>Biggs</u>, the Ninth Circuit found that parole denial based solely on the gravity of the commitment offense can initially satisfy due process requirements and that the "some evidence" standard could be satisfied by the parole board's consideration of the gravity of the offense.  However, in dicta, the <u>Biggs</u> court held that courts may also consider the parole board's decision-making process over time:  "The Parole Board's decision is one of 'equity' and requires a careful balancing and assessment of the factors considered . . . .  A continued reliance in the future on an unchanging factor . . . runs contrary to the rehabilitative goals espoused by the prison system and could result in a due process violation."  <u>Biggs</u>, 334 F.3d at 916-17.

Petitioner supports his claim that the Board failed to act impartially with percentages of inmate parole denials in California.  (Pet. at 12-13.)  Petitioner asserts that the Board granted parole in 1.7% of cases between 1990 and 2003.  (<u>Id.</u> at 12.)  He states that the Board denies parole to approximately ninety percent of inmates appearing at a parole hearing.  (<u>Id.</u>)  He claims a systematic bias deprived him of his liberty interest in parole.  (<u>Id.</u>)  It may be logical to deduce that the current parole denial rates evidence the Board's alleged predisposition to deny parole.  However, Petitioner has not proven that this alleged

11

predisposition played any role in the Board's decision in his case.

The Ninth Circuit has not specified the number of denials or the length of time served beyond the minimum sentence that would constitute a due process violation.   Petitioner had been denied parole by the Board three times; this was his fourth parole suitability hearing.   (Id. at 7.)   In Irons v. Carey, the District Court for the Eastern District of California granted a habeas petition challenging the parole board's fifth denial of parole where the petitioner had served sixteen years of a seventeen years to life sentence for second degree murder with a two-year enhancement for use of a firearm where all factors indicated suitability for parole; however, the Ninth Circuit reversed.   358 F. Supp. 2d 936, 947 (E.D. Cal. 2005), rev'd, 505 F.3d 846 (9th Cir. 2007).   The Ninth Circuit stated:

> We note that in all the cases in which we have held that a parole board's decision to deem a prisoner unsuitable for parole solely on the basis of his commitment offense comports with due process, the decision was made before the inmate had served the minimum number of years required by his sentence. Specifically, in Biggs, Sass, and here, the petitioners had not served the minimum number of years to which they had been sentenced at the time of the challenged parole denial by the Board.   Biggs, 334 F.3d at 912; Sass, 461 F.3d at 1125.   All we held in those cases and all we hold today, therefore, is that, given the particular circumstances of the offenses in these cases, due process was not violated when these prisoners were deemed unsuitable for parole prior to the expiration of their minimum terms.

Irons, 505 F.3d at 853-54.   Like Irons, Biggs and Sass, at the time of the Board's decision at issue here, Petitioner had not yet served the minimum number of years imposed in his sentence.   He had only served approximately twenty-five years of his minimum twenty-

United States District Court
For the Northern District of California

**United States District Court**
For the Northern District of California

seven year sentence.  (Pet. at 7.)

The Orange County Superior Court concluded that the Board's decision at Petitioner's 2004 parole suitability hearing was supported by "some evidence."  (Pet'r App. 1 at 2.)  The California state courts' denial of Petitioner's claim was not contrary to, or an unreasonable application of, controlling federal law, nor based on an unreasonable determination of facts.  See 28 U.S.C. § 2254(d).  Given the egregiousness of the commitment offense, the Court finds no due process violation because the Board deemed Petitioner unsuitable for parole prior to expiration of his minimum term.  Accordingly, Petitioner is not entitled to relief, and his due process claim is DENIED.

By Petitioner's 2007 parole suitability hearing, he will have served approximately twenty-eight years of his minimum twenty-seven-year sentence, and the holding in Irons will no longer be implicated.  If Petitioner is again denied parole by the Board, and the state court holds that some or all of the Board's findings are not supported by "some evidence," this Court will give deference to the state court's factual findings.

The Ninth Circuit's evolving guidance in Biggs, Sass and Irons suggests that the Board can continue to evaluate static factors, including the nature of the commitment offense, in deciding whether to grant parole.  See Sass, 461 F.3d at 1129.  The weight to be attributed to those immutable events, however, should decrease as a predictor of future dangerousness as the years pass and the prisoner demonstrates favorable behavior.  See Biggs, 334 F.3d at 916-17; Irons, 505 F.3d at 851.  Should Petitioner continue to

follow the Board's advice by attending self-help programming,
undergoing successful psychological evaluation regarding spousal
abuse and relationships with women, and maintaining a positive
disciplinary record, continued parole denials based on Petitioner's
commitment offense alone could eventually give rise to a due
process violation, once he has served his minimum term.

        B.    Sentencing Matrix

     Petitioner claims a due process violation because he is
overdue for release pursuant to the Board's sentencing matrix.
(Pet. at 13.) The base term for the first degree murder of a
"friend" where "death is almost immediate" is twenty-seven, twenty-
eight and twenty-nine years. Cal. Code Regs., tit. 15,
§ 2403(b)(B)(II). Relying on § 2403(b)(B)(II), Petitioner argues
that, because he had served approximately twenty-five years in
prison when he filed the present petition and received eight years
of post-conviction credit, he has met the maximum sentence
prescribed by the sentencing matrix. (Pet. at 13.)

     This argument fails. Petitioner is serving an indeterminate
sentence under California Penal Code § 1168. When a prisoner is
sentenced under § 1168, the parole board is empowered to determine
if he is suitable for parole. Cal. Penal Code § 3040(b). If so,
the board will set a release date after consulting the matrix.[4]
Cal. Code Regs. § 2411(a). However, the matrix need not be

---

[4] "The Board may grant . . . postconviction credit when the prisoner's performance, participation or behavior warrants such adjustment . . . of credit." Cal. Code Regs., tit. 15, § 2410(b). "[T]he panel shall consider . . . (1) Performance in Institutional Work . . . , (2) Participation in Self-Help and Rehabilitative Programs . . . , [and] (3) Behavior in the Institutional Setting." Id. at § 2410(c)(1)-(3).

United States District Court
For the Northern District of California

1    consulted if the board finds the prisoner to be unsuitable for

2    parole.   In re Dannenberg, 34 Cal. 4th 1061, 1071 (2005).

3        Here, the Board found Petitioner to be unsuitable for parole.

4    Therefore, it was not required to consult the matrix or calculate

5    good time credits.   Therefore, Petitioner's due process claim

6    relating to the Board's sentencing matrix is DENIED.

7                               CONCLUSION

8        For the foregoing reasons, the petition for a writ of habeas

9    corpus is DENIED.   The Clerk of the Court shall enter judgment and

10   close the file.

11       IT IS SO ORDERED.

12   Dated:   7/16/08

                                    CLAUDIA WILKEN
13                                  United States District Judge

United States District Court
For the Northern District of California

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

P:\PRO-SE\CW\HC.05\Wills2690.denyHC.frm       15

1

UNITED STATES DISTRICT COURT
FOR THE
NORTHERN DISTRICT OF CALIFORNIA

2

3

WILLS,

4                                                        Case Number: CV05-02690 CW

                    Plaintiff,

5                                                        **CERTIFICATE OF SERVICE**

    v.

6

KANE et al,

7

                    Defendant.

8    _____/

9

I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District

10   Court, Northern District of California.

11   That on July 16, 2008, I SERVED a true and correct copy(ies) of the attached, by placing said
     copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said

12   envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery receptacle
     located in the Clerk's office.

13

14

15   Jerry G. Wills
     C-20852

16   PO Box 689
     Soledad,  CA 93960-0689

17
     Scott Colin Mather

18   CA State Attorney General's Office
     455 Golden Gate Avenue, Suite 11000

19   San Francisco,  CA 94102-7004

20   Dated: July 16, 2008

21                                             Richard W. Wieking, Clerk
                                               By: Sheilah Cahill, Deputy Clerk

22

23

24

25

26

27

28

**United States District Court**
For the Northern District of California